**Blake Stephen MALLOY, Relator,**

v.

**COMMISSIONER OF HUMAN SERVICES, Respondent.**

No. C2–02–1336.

Court of Appeals of Minnesota.

March 18, 2003.

Samuel D. Orbovich, Orbovich & Gartner, Chtd., Saint Paul, MN, for relator.

Mike Hatch, Attorney General, Kerri Stahlecker Hermann, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, KALITOWSKI, Judge, and WILLIS, Judge.

## OPINION

WILLIS, Judge.

Relator appeals from the decision of the Commissioner of Human Services to deny reconsideration of relator's disqualification from providing direct-contact services for licensed facilities and unlicensed personal-care-provider organizations. Relator argues that the commissioner's decision was based on a reversal of the commissioner's set-aside of relator's disqualification, an action that relator contends exceeds the commissioner's statutory authority. Because we conclude that the commissioner exceeded his statutory authority, we reverse.

## FACTS

Relator Blake Stephen Malloy pleaded guilty in October 1998 to misdemeanor theft. In 2000, Malloy applied for a job with a daycare center licensed by respondent Commissioner of Human Services ("the commissioner"). When a criminal-background check revealed Malloy's misdemeanor conviction, the commissioner disqualified Malloy from providing direct-contact services for facilities licensed by either the Department of Human Services ("DHS") or the Department of Health, or for unlicensed personal-care-provider organizations. Malloy requested a reconsideration of his disqualification, and the commissioner set aside the disqualification in August 2000, noting that Malloy's "background study status * * * is now the same as any person who was not disqualified."

In November 2001, the commissioner found Malloy "culpable for maltreatment" and reversed the earlier set-aside of Malloy's disqualification. The finding of culpability followed an incident in which Malloy allowed a child to leave the daycare center with someone not authorized by the child's parents to pick the child up. Police located the child, unharmed, 11 hours later. The commissioner's report on the investigation of the incident concluded that Malloy's conduct constituted maltreatment, but because the child was located unharmed, "the maltreatment for which [Malloy] was culpable [did] not meet the statutory definition of serious or recurring maltreatment." The commissioner nonetheless reversed the earlier set-aside and disqualified Malloy, concluding that the basis for the 2000 set-aside had changed "in light of the finding of maltreatment" in 2001. Malloy requested reconsideration in December 2001, and the commissioner refused to reverse the disqualification.

In early 2002, Malloy applied for a job with a second DHS-licensed daycare center, and the daycare center submitted a background-study form to the commissioner. In April 2002, the commissioner notified Malloy of his prior disqualification based on his theft conviction and ordered the second daycare center to remove Malloy from "any position allowing direct contact" with children at the center. The commissioner also notified Malloy of his right to request reconsideration of the disqualification, and Malloy requested reconsideration. In June 2002, the commissioner refused to set aside the disqualification. This certiorari appeal follows.

## ISSUE

■ Did the commissioner exceed his statutory authority by disqualifying Malloy

based on his prior disqualification, which had been set aside?

## ANALYSIS

Malloy argues that the commissioner exceeded his statutory authority by denying reconsideration of Malloy's June 2002 disqualification because the denial was based on the commissioner's improper November 2001 reversal of a set-aside. Malloy contends that the commissioner was without statutory authority to reverse a prior set-aside, and he points to the statute defining the decision to set aside a disqualification as a "final administrative decision." He further argues that the November 2001 finding of maltreatment was not a proper basis for disqualification because the maltreatment was found to be neither serious nor recurring.

■ When reviewing an agency decision, this court determines whether the commissioner violated the constitution, exceeded his authority, engaged in unlawful procedure, erred as a matter of law, issued a decision unsupported by substantial evidence, or acted arbitrarily or capriciously. Minn.Stat. § 14.69 (2002); *In re Investigation into Intra–LATA Equal Access & Presubscription,* 532 N.W.2d 583, 588 (Minn.App.1995), *review denied* (Minn. Aug. 30, 1995). An agency's determination is void and subject to collateral attack if made without, or in excess of, statutory power. *McKee v. County of Ramsey,* 310 Minn. 192, 195, 245 N.W.2d 460, 462 (1976). "Neither agencies nor courts may under the guise of statutory interpretation enlarge the agency's powers beyond that

which was contemplated by the legislative body." *Waller v. Powers Dep't Store,* 343 N.W.2d 655, 657 (Minn.1984) (citation omitted).

The grounds for disqualification from "any position allowing direct contact with persons receiving services from [a DHS] license holder" are set out at Minn.Stat. § 245A.04, subd. 3d (2002). A disqualified individual may request reconsideration of the disqualification, *id.,* subd. 3b(a) (2002), and the commissioner "may set aside the disqualification * * * if the commissioner finds that the individual does not pose a risk of harm," *id.,* subd. 3b(b) (2002). The commissioner's decision to grant or deny a reconsideration request is a final administrative decision subject to certiorari review, unless it results from a contested hearing. *See id.,* subd. 3b(e) (2000).[1]

The statutory scheme does not contemplate the commissioner's reversal of a set-aside of a disqualification. Further, the statute provides that the commissioner's August 2000 decision to set aside Malloy's disqualification was a final decision. The commissioner noted as much when informing Malloy of the set-aside, writing that Malloy was thereafter in the same position as someone who had not been disqualified.

Had the November 2001 investigation found Malloy culpable for serious or recurring maltreatment, the commissioner would have been required to disqualify Malloy for that maltreatment. A person "shall be disqualified" if, among other reasons, he is found culpable for maltreatment and the maltreatment is "serious or recurring." *Id.,* subd.3d(a)(4) (2002). But

---

1. Subdivision 3b(e) was amended in 2001. *See* 2001 Minn. Laws 1st Spec. Sess. ch. 9, art. 14, § 13. Because the change alters Malloy's "matured rights," we apply the law in effect in August 2000, when the commissioner set aside Malloy's disqualification. *See McClelland v. McClelland,* 393 N.W.2d 224, 226 (Minn.App.1986), *review denied* (Minn. Nov. 17, 1986).

the record is clear that there was no such finding. The requirement of "serious or recurring maltreatment" in Minn.Stat. § 245A.04, subd. 3d(a)(4), would be rendered superfluous if a person could be disqualified for a finding of maltreatment that falls short of the definition of "serious or recurring." *See* Minn.Stat. 645.17(2) (2002) (providing that it must be presumed that the legislature intended the entire statute to be effective and certain).

Because we conclude that the commissioner exceeded his statutory authority, we need not address Malloy's arguments that the commissioner's decision was unsupported by substantial evidence or that it violated his due-process rights.

## DECISION

The commissioner exceeded his statutory authority by reversing the set-aside of Malloy's disqualification.

**Reversed.**

